16 F.3d 1223
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Jesse WEST, Defendant-Appellant.
 No. 93-1253.
 United States Court of Appeals, Sixth Circuit.
 Feb. 17, 1994.
 
 Before: BOGGS and NORRIS, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant, Jesse West, was convicted of one count of aiding and abetting the distribution of cocaine in violation of 21 U.S.C. Sec. 841 and 18 U.S.C. Sec. 2, after a jury trial in the United States District Court for the Eastern District of Michigan, Southern Division.
 
 
 2
 In December 1987, topless dancer Constance Perry, while dancing at work, met two men wearing an unusual number of gold chains. The excessive amount of gold chains led her to believe they were drug dealers. She approached the men, with a private dance at their table, and confirmed her suspicions by mentioning she knew someone interested in purchasing cocaine. She relayed the information to her boyfriend, Craig Weaver, a convicted felon and part-time Drug Enforcement Administration ("DEA") paid informant. Weaver contacted DEA agents and they set up a controlled buy.
 
 
 3
 On December 16, 1987, Perry and Weaver, surveilled by DEA special agents, entered the appointed hotel and waited for the drugs to arrive. The seller, Kevin King, arrived with defendant Jesse West. The defendant momentarily left, returning with a tall black male carrying a brief case, Darryl Funchess. Defendant, Weaver and Funchness entered a hotel bathroom and placed the briefcase on the sink counter. Defendant opened the combination lock on the brief case to display the cocaine. Defendant closed the brief case and Weaver carried it into the lounge, while Perry ostensibly went to retrieve the money. Weaver gave the prearranged bust signal and DEA agents rushed in and arrested the defendant.
 
 
 4
 Co-defendants, Reginald Williams and Darryl Funchess, were tried separately and acquitted before defendant's trial. The other co-defendant seller, Kevin King, was killed several weeks after the bust and was, thus, never indicted. Defendant was convicted as charged and sentenced to seventy months imprisonment, followed by four years of supervised release.
 
 
 5
 On appeal, defendant raises five assignments of error challenging the conduct of the government prosecutor at trial, evidentiary and procedural matters, as well as the effectiveness of his counsel at trial. Upon review, we find none of defendant's challenges to be well taken.
 
 I.
 
 6
 Defendant West first charges that the government prosecutor violated the terms of a stipulation agreement by telling the jury that two co-defendants had already stood trial. The stipulation represented an agreement between defense counsel and prosecutor to make:
 
 
 7
 "... no mention at trial that co-defendants Darryl Funchess and Reginald Williams were found not guilty at their trial. And we have also stipulated Government Exhibit one which is a white powdery substance contained in a plastic-- ... wrapper. It consists of approximately one kilogram of cocaine, seized at the Ponchartrain Hotel on December 16, 1987." Joint Appendix, p. 14.
 
 
 8
 Defendant complains government counsel made the following remark, in violation of the stipulation, during her opening statement at trial:
 
 
 9
 Now there are legal reasons why Darryl Funchess and Reginald Williams are not here today. They have stood trial, and the judge will instruct you at the end of this case, that your job here in the next two days, is to look only as to whether the Government, and that is my burden, proves it's [sic.] case beyond a reasonable doubt against this defendant, Jesse West. Joint Appendix, pp. 23-24.
 
 
 10
 To constitute prosecutorial misconduct, the purported misconduct must egregiously prejudice a specific and substantial right of the defendant. Donnelly v. DeChristoforo, 416 U.S. 637, 643-45 (1974); United States v. Meyers, 952 F.2d 914, 917 (6th Cir.), cert. denied, 112 S.Ct. 1695 (1992); Martin v. Foltz, 773 F.2d 711, 716-717 (6th Cir.1985), cert. denied, 478 U.S. 1021 (1986); Angel v. Overberg, 682 F.2d 605, 608 (6th Cir.1982).
 
 
 11
 In the instant case, the prosecutor's statement, that two co-conspirator/defendants stood trial, did not reveal the acquittals and, thus, did not expressly violate the stipulation agreed to by counsel for both sides. Further, defense counsel made no objection and, in fact, on numerous occasions throughout the trial, reminded the jury himself that the two trials had taken place by repeatedly refreshing witnesses' recollections with their testimony in the preceding trials. Finally, it does not seem unduly prejudicial to defendant West for the jury to suspect that neither of his purported co-conspirators were found guilty of the crimes charged.
 
 
 12
 Where, as here, the prosecutor's conduct is not flagrant, where proof of guilt is overwhelming, where counsel does not object and/or where the trial judge steps in and admonishes the jury, a reviewing court will not find reversible error. United States v. Bess, 593 F.2d 749, 756-757 (6th Cir.1979). Reversible error exists only when comments so infect the trial with unfairness as to make the resulting conviction a denial of due process. United States v. Sivils, 960 F.2d 587, 592 (6th Cir.1992), cert. denied, 113 S.Ct. 130 (1992), quoting Donnelly v. DeChristoforo, 416 U.S. at 643.
 
 
 13
 We find the prosecutor's statement in the instant case did not "so [infect] the trial with unfairness as to make the resulting conviction a denial of due process." See United States v. Sivils, 960 F.2d at 592. Accordingly, we find no prosecutorial misconduct and this assigned error fails.
 
 II.
 
 14
 In his second assignment of error, defendant challenges the introduction of DEA informant Weaver's testimony. As defense counsel raised no objections to this testimony at trial, we will review this contention for plain error. A plain error is one which creates a "manifest miscarriage of justice." United States v. Cox, 957 F.2d 264, 265 (6th Cir.1992).
 
 
 15
 On his cross examination of government informant Weaver, defense counsel solicited statements concerning Weaver's testimony in the prior trial of West's co-defendants, in an attempt to demonstrate Weaver had previously identified individuals seated at the defense table as people he saw at the hotel on December 16, 1987, thus demonstrating a habit of fingering defendants.
 
 
 16
 On redirect, the government revisited the same portion of the trial transcript referenced by defense counsel on direct. Her questions elicited a description of one of the co-defendants who, Weaver acknowledged, looked like West but was not, and, unlike West, was not at the hotel on December 16, 1987.
 
 
 17
 Whether this testimony is considered identification testimony, a consistent or an inconsistent prior statement, it is nonetheless admissible nonhearsay pursuant to the plain language of FED.R.EVID. 801(d)(1).[1] This court finds no error concerning the admission of this testimony.
 
 
 18
 West also argues that he was denied the effective assistance of trial counsel by that attorney's failure to raise objections.[2] This court normally will not consider claims of ineffective assistance of counsel for the first time on appeal. United States v. Gonzales, 929 F.2d 213, 215 (6th Cir.1991). The defendant is usually expected to raise this claim in a post conviction relief proceeding pursuant to 28 U.S.C. Sec. 2255. United States v. Gonzales, 929 F.2d at 215. Only where the record is adequate to assess the merits of a defendant's claims, can this court consider them. United States v. Wunder, 919 F.2d 34, 37 (6th Cir.1990). The record in this case is not sufficiently developed for this court to fully assess the substance of defendant's claims. A 28 U.S.C. Sec. 2255 motion for post conviction relief is a more appropriate vehicle by which to raise these issues. We decline to consider this question on direct appeal.
 
 III.
 
 19
 In his third assignment of error, West charges the district court abused its discretion by limiting the length of defense counsel's cross examination of a government witness.
 
 
 20
 Defendant West complains his trial counsel conducted rambling and pointless cross examinations of government witnesses. The defense attorney frequently elicited, from witnesses, repetitious and irrelevant testimony from West's co-defendants' trial transcripts. At times, the repetitious testimony served better to illustrate the government's case rather than to defend West. Finally, after each of defense counsel's cross examinations took significantly longer than the government's direct examinations, the court admonished defense counsel to wrap up his cross examination of one of the government's witnesses in ten minutes. When defense counsel failed to heed the court's instruction, the court engaged in the following colloquy with counsel, out of the presence of the jury:
 
 
 21
 THE COURT: ... I want the record to reflect at 10:55, I called counsel up to the bench, and I instructed counsel for the defendant to complete his cross-examination of this witness by 11:05. It's now 11:15. He has ignored my instruction to him. Counsel for the defendant is asking irrelevant repetitive questions, and he has ignored my instruction to him. I want to know why.
 
 
 22
 MR. POOKRUM [defense counsel]: Well, Your Honor, quite frankly, I didn't realize the time had gone so quickly. I did notice at about five minutes to, or was that five, when you called us up.
 
 
 23
 THE COURT: I called you up at 10:55, and told you to finish by 11:05. I believe counsel that you are not proceeding in good faith in this case. I have never heard a cross-examination like this. I have been a Judge for 14 years. You're asking irrelevant argumentative questions. I have been giving you wide latitude in doing this. If you have got a point, you better get to it. I am going to give you ten more minutes with this witness when the jury comes back. And I am going to cut you off in the middle of a sentence if you exceed it by one minute.
 
 
 24
 MR. POOKRUM: Very well, Your Honor.
 
 
 25
 THE COURT: Do we have any question about it?
 
 
 26
 MR. POOKRUM: No I, don't have any question about it. I will take my watch off, so that I can place it in a more prominent position. I think I should say also, that this witness's answers don't help the situation. And I am certain that the Court could not be ignorant of the fact that he is deliberately filling this record with his own self-serving version of these events, instead of answering questions yes or no or maybe so, or I don't recall. He goes on ad nauseam filling this record and belaboring this cross-examination with his own self-serving purposes. And instead of him just saying I don't know, or I didn't do that, or I should have done it, or yeah, you got me, or whatever, he just goes on and on and on and on and that is what has delayed this cross-examination.
 
 
 27
 THE COURT: Not in my judgment. I have given you wide latitude to ask any question you want. You keep dwelling on things that are totally irrelevant to the inquiry here. You're asking argumentative questions. The record will reflect what it reflects. We will take about five minutes, and we are going to come back. You will have ten minutes left.
 
 
 28
 Joint Appendix pp. 292-294.
 
 
 29
 FED.R.EVID. 611(b) limits the scope of cross examination to matters addressed on direct and permits cross examination on collateral topics reasonably related to inferences drawn from the actual direct examination. United States v. Moore, 917 F.2d 215, 222 (6th Cir.1990), cert. denied, 111 S.Ct. 1590 (1991); United States v. Arnott, 704 F.2d 322, 324 (6th Cir.1983), cert. denied, 104 S.Ct. 364 (1983). The district court also has broad discretion to prohibit or curtail the production of extraneous and irrelevant evidence. Laney v. Celotex Corp., 901 F.2d 1319, 1320 (6th Cir.1990); Schrand v. Federal Pac. Elec. Co., 851 F.2d 152, 156-157 (6th Cir.1988); Mitroff v. Xomox Corp., 797 F.2d 271, 275 (6th Cir.1986). An abuse of discretion warranting reversal exists only where the reviewing court is certain that a mistake was made. Laney v. Celotex Corp., 901 F.2d at 1321; Schrand v. Federal Pac. Elec. Co., 851 F.2d at 157.
 
 
 30
 In the instant case, the court merely attempted, albeit unsuccessfully, to curtail defense counsel's lengthy and repetitious cross examination. The court gave counsel ample opportunity to put forth every relevant theory of the case, but counsel instead dwelled on extraneous details which in no way advanced the defense. In light of these circumstances, this court finds the court's attempt to curtail defense counsel's cross examination was within its sound discretion.
 
 IV.
 
 31
 Defendant complains that DEA Special Agent Hendrie improperly told the jury the defendant exercised his fifth amendment right to silence in response to the questions of a DEA agent.
 
 The relevant exchange occurred as follows:
 
 32
 Q. So he never--you never said well, now, Mr. West, you have talked with me, you told me some things about the case. I want to make sure I have got my notes straight. This is what I have, A, B, C, D. You got $2,000 blah, blah, blah. You know does this look right, and he--you never did that?
 
 
 33
 A. He would not allow me to do that.
 
 
 34
 Q. He would not allow you to do what?
 
 
 35
 A. To go over those notes.
 
 
 36
 Q. How could--he stopped you from going over the notes?
 
 
 37
 A. He indicated, as I indicated earlier, he terminated the conversation by telling me that he wished to remain silent. And from that point, I didn't ask him any substantive questions about the case. I merely finished the booking processes. And from that, I inferred that, of course, he was not willing to go though with, and I knew I was not permitted to ask him anymore questions, so I did not.
 
 
 38
 Q. And you didn't mark anything on your notes here to the effect that interview terminated, because defendant exercised his right to remain silent, or nothing like that. You didn't make any notes like that on your paper, in the time that this conversation ended?
 
 
 39
 A. I would have to look at the notes to say.
 
 
 40
 Q. You don't remember?
 
 
 41
 A. I do remember him saying that. But I don't remember whether or not the notes reflect that. The notes end with my last question, and the question was unanswered, and I didn't make a note as to what he said.
 
 
 42
 Q. You didn't say question, must have known that, and then answer, "defendant remained silent", or anything like that?
 
 
 43
 A. No. He told me he wanted to remain silent.
 
 
 44
 Joint Appendix pp. 309-310.
 
 
 45
 Defendant's attorney repeatedly forced the witness to repeat that defendant wished to exercise his fifth amendment right to silence. Defense counsel's overall performance and the transcript of this colloquy suggest, in fact, that had the prosecutor not interrupted with an objection regarding the scope of the cross examination, defense counsel would have continued emphasizing this point for the jury. It is well settled that a party may not complain on appeal of errors that he himself provoked or invited the opposing party to commit. All American Life & Casualty Co. v. Oceanic Trade Alliance Council Int'l, Inc., 756 F.2d 474, 479-480 (6th Cir.1985), cert. denied, 474 U.S. 819 (1985).
 
 
 46
 This assignment of error fails.
 
 V.
 
 47
 In his last assigned error, defendant complains the district court erroneously declined to suppress statements he made to DEA agents after he received his Miranda warnings and waived his right to the presence of counsel. The argument raises the issue of whether the defendant or his retained counsel should have the power to waive a defendant's constitutional rights.
 
 
 48
 It should first be noted that defendant never moved the court to suppress the statements before or at trial and so he cannot raise this issue for the first time on appeal. Taft Broadcasting Co. v. United States, 929 F.2d 240, 243 (6th Cir.1991). See FED.R.CRIM.P. 12(b)(3). We thus decline to consider defense counsel's argument that the decision to waive a defendant's own constitutional rights should rest only with retained counsel and not with defendant.
 
 
 49
 This assigned error is meritless.
 
 
 50
 For the foregoing reasons, the judgment of the district court is hereby AFFIRMED.
 
 
 51
 The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition, or (B) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive, or (C) one of identification of a person made after perceiving the person; ...
 
 
 
 [1]
 FED.R.EVID. 801(d)(1) classifies the following types of statements as nonhearsay:
 
 
 [2]
 Appellate counsel did not represent defendant at trial